1  JEFFREY H. WOOD
   Acting Assistant Attorney General
2  Environment and Natural Resources Division
   DEBORAH A. GITIN (CABN 284947)
3  Senior Counsel
   Environmental Enforcement Section
4  Environment and Natural Resources Division
   U.S. Department of Justice
5  301 Howard Street, Suite 1050
   San Francisco, California  94105
6  Telephone: (415) 744-6488
   Facsimile: (415) 744-6476
7  Email:   Deborah.Gitin@usdoj.gov
8
9  ALEX G. TSE (CABN 152348)
   United States Attorney
10 SARA WINSLOW (DCBN 457643)
   Chief, Civil Division
11 MICHELLE LO (NYBN 4325163)
   Assistant United States Attorney
12 450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
13 Telephone: (415) 436-7180
   Facsimile:  (415) 436-6748
14 Email: Michelle.Lo@usdoj.gov
15
16 *Attorneys for the United States of America*
   **(additional counsel on following page)**
17
18                    **UNITED STATES DISTRICT COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**
19
20 UNITED STATES OF AMERICA,

21         and                                          Civ. No. _____

22 THE STATE OF MISSISSIPPI,

23                  Plaintiffs,                         **COMPLAINT**

24         v.

25 CHEVRON U.S.A. INC.,

26                  Defendant.

27

28

GRETCHEN L. ZMITROVICH (MSBN 101470)
Senior Attorney
Office of Pollution Control
Mississippi Department of Environmental Quality
P.O. Box 2261
Jackson, MS  39225-2261
Telephone: (601) 961-5050
Facsimile: (601) 961-5674
Email: gzmitrovich@mdeq.ms.gov

*Attorney for the State of Mississippi*

COMPLAINT
*United States of America and the State of Mississippi v. Chevron U.S.A. Inc.* (N.D. Cal.)

Plaintiff, the United States of America ("United States"), by the authority of the Attorney General, through its undersigned attorneys, and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and Plaintiff, the State of Mississippi, acting through the Mississippi Commission on Environmental Quality and the Mississippi Department of Environmental Quality (collectively, "the MDEQ"), hereby file this Complaint and allege the following:

## I.   PRELIMINARY STATEMENT

1.      This is a civil action for penalties and injunctive relief brought pursuant to Section 113(b)(2) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b)(2); Section 325 of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. § 11045; and Section 109(c) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9609(c), against Defendant, Chevron U.S.A. Inc. ("Defendant" or "Chevron").

2.      The United States alleges violations of Section 112(r)(7) of the CAA, 42 U.S.C. § 7412(r)(7), at four petroleum refineries owned and/or operated by Chevron in Richmond, California ("Richmond Refinery"), El Segundo, California ("El Segundo Refinery"), North Salt Lake City, Utah ("Salt Lake City Refinery"), and Pascagoula, Mississippi ("Pascagoula Refinery"), and at an additional petroleum refinery formerly owned and/or operated by Chevron in Kapolei, Hawaii ("Kapolei Refinery").  (The refineries listed in the previous sentence are collectively referred to hereinafter as "the Refineries.")  The MDEQ alleges CAA Section 112(r)(7) violations at the Pascagoula Refinery, pursuant to the MDEQ's authority under Mississippi Air and Water Pollution Control Law, Miss. Code Ann. § 49-17-1, *et seq.*

3.      The United States alleges violations of Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1), at the Richmond Refinery and the Pascagoula Refinery.

4.      The United States alleges violations of the emergency release notification requirements of Section 103 of CERCLA, 42 U.S.C. § 9603, at the Richmond Refinery.

5.     The United States alleges violations of Section 304 of EPCRA, 42 U.S.C.
§ 11004, at the Richmond Refinery.

## II.   <u>JURISDICTION, VENUE, INTRADISTRICT ASSIGNMENT, AND NOTICE</u>

6.     <u>Jurisdiction:</u> This court has jurisdiction over the subject matter of this action
pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b); Section 109(c) of CERCLA, 42
U.S.C. § 9609(c); Section 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3); and 28 U.S.C. §§ 1331,
1345 and 1355.  This court has supplemental jurisdiction over the claims brought by the MDEQ
pursuant to 28 U.S.C. § 1367 and Miss. Code Ann. §§ 49-17-17 and 49-17-29.

7.     <u>Venue:</u> Venue is proper in this judicial district pursuant to Section 113(b) of the
CAA, 42 U.S.C. § 7413(b); Section 113(b) of CERCLA, 42 U.S.C. § 9613(b); Section 325(c)(4)
of EPCRA, 42 U.S.C. § 11045(c)(4); and 28 U.S.C. §§ 1391(b), 1391(c), 1391(d), and 1395(a),
because Defendant's headquarters is located in this judicial district and some of the violations
alleged occurred at Defendant's facilities located within this judicial district.

8.     <u>Intradistrict Assignment</u>: The Richmond Refinery is located in the City of
Richmond, Contra Costa County.  Defendant Chevron's corporate headquarters is located in San
Ramon, Contra Costa County.  Civil Local Rule 3-2(d) for the Northern District of California
provides for assignment to the San Francisco Division or the Oakland Division.

9.     <u>Notice to States</u>: The United States has notified the States of California, Hawaii,
Mississippi, and Utah of the commencement of this action pursuant to Section 113(b) of the CAA,
42 U.S.C. § 7413(b).

## III.   <u>PARTIES</u>

10.     Plaintiffs are the United States of America, acting at the request of the EPA, an
agency of the United States; and the MDEQ (collectively referred to as "Plaintiffs").

11.     Defendant Chevron is a corporation that has its headquarters in San Ramon,
California, and does business in this judicial district.

4

COMPLAINT
*United States of America and the State of Mississippi v. Chevron U.S.A. Inc.* (N.D. Cal.)

12.     Defendant is a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e); Section 101(21) of CERCLA, 42 U.S.C. § 9601(21); and Section 329(7) of EPCRA, 42 U.S.C. § 11049(7).

13.     Defendant is an owner and/or operator of the Richmond Refinery, El Segundo Refinery, Salt Lake City Refinery, and Pascagoula Refinery, and Defendant was until approximately November 1, 2016, an owner and/or operator of the Kapolei Refinery, within the meaning of Section 112(a)(9) of the CAA, 42 U.S.C. § 7412(a)(9).

## IV.   STATUTORY AND REGULATORY FRAMEWORK

### A.     Clean Air Act (CAA)

14.     In 1990, Congress added Section 112(r) to the Clean Air Act, *see* Pub. L. 101-549 (Nov. 15, 1990) (42 U.S.C. § 9412), in response to a 1984 catastrophic release of an extremely hazardous substance in Bhopal, India that killed more than 3,400 people, caused over 200,000 to suffer injuries, and caused damage to crops and livestock.  S. Rep. No. 101-228 (Dec. 20, 1989), *reprinted in* 1990 U.S.C.C.A.N. 3385, 3519.

15.     Congress' intent in enacting Section 112(r) of the CAA, 42 U.S.C. § 7412(r), was to prevent and minimize the consequences of accidental releases of substances that may cause death, injury, or property damage.  S. Rep. No. 101-228 (Dec. 20, 1989), *reprinted in* 1990 U.S.C.C.A.N. 3385, 3528-29.

16.     Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1), includes a "General Duty Clause" that places the responsibility to design and maintain a safe facility on the owner or operator of the facility.

17.     The General Duty Clause applies to owners and operators of stationary sources that produce, process, handle, or store specific hazardous substances.  In pertinent part, Section 112(r)(1) provides:

It shall be the objective of the regulations and programs authorized under this subsection to prevent the accidental release and to minimize the consequences of any such release of any substance listed pursuant to paragraph (3) or any other extremely hazardous substance.  The owners and operators of stationary sources producing, processing, handling or storing such substances have a general duty in

the same manner and to the same extent as Section 654 of Title 29 [29 U.S.C. § 654] to identify hazards which may result from such releases using appropriate hazard assessment techniques, to design and maintain a safe facility taking such steps as are necessary to prevent releases, and to minimize the consequences of accidental releases which do occur.

42 U.S.C. § 7412(r)(1) (hereinafter "General Duty Clause").

18.     Section 112(r)(7) of the CAA, 42 U.S.C. § 7412(r)(7), authorizes EPA to promulgate release prevention, detection, and correction requirements to prevent accidental releases of "regulated substances," and requires a prompt emergency response to any such releases in order to protect human health and the environment.  On June 20, 1996 (61 Fed. Reg. 31668), EPA promulgated regulations to implement Section 112(r)(7), codified at 40 C.F.R. Part 68 and known as the Risk Management Program regulations ("RMP Regulations"), which apply to the owners and operators of stationary sources that have more than a threshold quantity of a regulated substance in a "process."  *See* 40 C.F.R. § 68.10.

19.     Section 112(r)(2)(B) of the CAA, 42 U.S.C. § 7412(r)(2)(B), defines "regulated substance" as a substance listed by EPA under Section 112(r)(3) of the CAA, 42 U.S.C. § 7412(r)(3); the listed substances are those "which, in the case of an accidental release, are known to cause or may reasonably be anticipated to cause death, injury, or serious adverse effects to human health or the environment," *id.*   Pursuant to Section 112(r)(3), 42 U.S.C. § 7412(r)(3), EPA promulgated a list of "regulated substances."  *See* 40 C.F.R. § 68.130.

20.     Section 112(r)(2)(C) of the CAA, 42 U.S.C. § 7412(r)(2)(C), defines a "stationary source" as any buildings, structures, equipment, installations or substance emitting stationary activities which belong to the same industrial group, are located on one or more contiguous properties, are under the control of the same person, and from which an accidental release may occur.

21.     Section 112(r)(2)(A), 42 U.S.C. § 7412(r)(2)(A), defines "accidental release" as an unanticipated emission of a regulated substance or other extremely hazardous substance into the ambient air from a stationary source.

22.     40 C.F.R. § 68.3 defines "owner or operator" as "any person who owns, leases, operates, controls, or supervises a stationary source."

23.     40 C.F.R. § 68.3 defines "process" to mean "any activity involving a regulated substance including any use, storage, manufacturing, handling, or on-site movement of such substances, or any combination of these activities." "Covered process" means "a process that has a regulated substance present in more than a threshold quantity as determined under [40 C.F.R.] § 68.115."

24.     The regulations at 40 C.F.R. Part 68 separate covered processes into three categories, designated as Program 1, Program 2, and Program 3, and set forth specific requirements for owners and operators of stationary sources with processes that fall within the respective programs.

25.     Pursuant to 40 C.F.R. § 68.10(d), a covered process is subject to Program 3 requirements if it does not meet one or more of the Program 1 eligibility requirements set forth in 40 C.F.R. § 68.10(b) and it is either (1) listed in one of the specific North American Industry Classification System codes found in 40 C.F.R. § 68.10(d)(1); or (2) is subject to the United States Occupational Safety and Health Administration ("OSHA") process safety management standard set forth in 29 C.F.R. § 1910.119.

26.     Pursuant to 40 C.F.R. §§ 68.12(a) & (d), the owner or operator of a stationary source with a process subject to Program 3 prevention requirements must undertake certain tasks, including but not limited to:

    a.     Submitting a Risk Management Plan, as provided in 40 C.F.R. §§ 68.150 – 68.185;

    b.     Establishing and implementing a management system, as provided in 40 C.F.R. § 68.15;

    c.     Conducting a hazard assessment to assess a worst-case release scenario, as provided in 40 C.F.R. §§ 68.20-68.42;

d.      Implementing the Program 3 prevention requirements provided in 40 C.F.R. §§ 68.65-68.87, including safety information, hazard analysis, operating procedures, training, mechanical integrity, management of change, pre-startup review, compliance audits, incident investigation, employee participation, hot work permits, and rules governing contractors;

e.      Establishing and implementing an emergency response program as provided in 40 C.F.R. §§ 68.90-68.95; and

f.      Submitting as part of its RMP Plan the data on prevention program elements for Program 3 processes as provided in 40 C.F.R. § 68.175.

27.     Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the United States may commence a civil action against any person that is the owner or operator of a covered source, to obtain civil penalties and a permanent or temporary injunction, whenever such person violated or is violating any requirement or prohibition of the CAA, including the requirements of Section 112(r)(1), 42 U.S.C. § 7412(r)(1); and Section 112(r)(7), 42 U.S.C. § 7412(r)(7), and its implementing regulations, including 40 C.F.R. Part 68.

28.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as modified by the Debt Collection Improvements Act of 1996, 31 U.S.C. § 3701, and as implemented by the Civil Monetary Penalties Inflation Rule, 40 C.F.R. Part 19, establishes maximum civil penalties for violations of the CAA.  Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, Defendant is liable for an assessment of civil penalties of up to $37,500 per day, per violation, for each violation of Section 112(r)(1) and for each violation of Section 112(r)(7) of the CAA that occurred after January 12, 2009 but no later than November 2, 2015, and $97,229 per day, per violation, for each violation that occurred after November 2, 2015.

**B.      Mississippi Regulations Promulgated Pursuant to CAA § 112(r)(7) Delegated Program**

29.     Section 112(l) of the CAA and 40 C.F.R. Part 63, Subpart E authorize EPA to approve state rules and programs to be implemented and enforced in place of certain CAA requirements, including the Risk Management Program set forth at 40 C.F.R. Part 68.  EPA

promulgated 40 C.F.R. Part 63, Subpart E on November 26, 1993 (58 Fed. Reg. 62262) and subsequently amended these regulations on September 14, 2000 (65 Fed. Reg. 55810).

30.     On May 22, 1998, the State of Mississippi incorporated by reference the federal RMP Regulations.  The State of Mississippi is, accordingly, a state that has been delegated concurrent authority, together with EPA, to enforce the RMP Regulations; these RMP Regulations are codified in the Mississippi Air and Water Pollution Control Law, Miss. Code Ann. § 49-17-1, *et seq*.  The implementing regulations are set forth in 11 Miss. Admin. Code Pt. 2, R. 8.2.

**C.     Emergency Planning and Community Right-to-Know Act (EPCRA) and Comprehensive Environmental Response, Compensation and Liability Act (CERCLA)**

31.     Section 304 of EPCRA, 42 U.S.C. § 11004, and the regulations set forth at 40 C.F.R. § 355.40 require the owner or operator of a facility at which a hazardous chemical is produced, used, or stored to notify certain government authorities when there is a release equal to or greater than the reportable quantity of any EPCRA extremely hazardous substance or of any hazardous substance listed under CERCLA.

32.     Specifically, Section 304(b) of EPCRA requires that the owner and operator immediately notify the State Emergency Response Commission ("SERC") of any State likely to be affected by the release, and the emergency coordinator for the Local Emergency Planning Committee ("LEPC") for any area likely to be affected by the release.

33.     Section 103(a) of CERCLA states that "[a]ny person in charge of . . . an onshore facility shall, as soon as he has knowledge of any release . . . of a hazardous substance . . . in quantities equal to or greater than those determined pursuant to [Section 102 of CERCLA], immediately notify the National Response Center."  42 U.S.C. § 9603(a).

34.     Section 109(c) of CERCLA provides:

The President may bring an action in the United States district court for the appropriate district to assess and collect a penalty of not more than $25,000 per day for each day during which the violation (or failure or refusal) continues in the case of . . . (1) A violation of the notice requirements of section 9603(a) or 9603(b) of this title . . . . In the case of a second or subsequent violation (or failure

or refusal), the amount of such penalty may be not more than $75,000 for each day during which the violation (or failure or refusal) continues.

42 U.S.C. § 9609(c).

35.     Section 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3), and Section 109 of CERCLA, 42 U.S.C. § 9609, as modified by the Debt Collection Improvements Act of 1996, 31 U.S.C. § 3701, and as implemented by the Civil Monetary Penalties Inflation Rule, 40 C.F.R. Part 19, establish maximum civil penalties for violations of the reporting requirements of Section 304 of EPCRA and Section 103 of CERCLA.  Pursuant to these authorities, Defendant is liable for an assessment of civil penalties of up to $37,500 per day, per violation, for each violation of Section 304 of EPCRA, 42 U.S.C. § 11004, and for each violation of Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), that occurred after January 12, 2009 but not later than November 2, 2015.

## V.   DEFENDANT'S FACILITIES

36.     At all times relevant to this action, Defendant has been and continues to be the "owner" and/or "operator" of the following facilities within the meaning of Section 112(a)(9) of the CAA, 42 U.S.C. § 7412(a)(9):

> Richmond Refinery
> 841 Chevron Way
> Richmond, California
>
> El Segundo Refinery
> 324 West El Segundo Blvd.
> El Segundo, California
>
> Pascagoula Refinery
> 250 Industrial Road
> Pascagoula, Mississippi
>
> Salt Lake City Refinery
> 2351 North 1100 West
> Salt Lake City, Utah

37.     At all times relevant to this action up to and until approximately November 1, 2016, Defendant was the owner and/or operator of the following facility within the meaning of Section 112(a)(9) of the CAA, 42 U.S.C. § 7412(a)(9):

> Kapolei Refinery
> 91-480 Malakole
> Kapolei, Hawaii

38.     At all times relevant to this action, each of the Refineries was a "stationary source" within the meaning of Section 112(r)(2)(C) of the CAA, 42 U.S.C. § 7412(r)(2)(C). Upon information and belief, the facilities listed in Paragraph 36 comprise the entirety of the refinery facilities currently owned and/or operated by Defendant in the United States.

39.     At all times relevant to this action, each of the Refineries was subject to the General Duty Clause of Section 112(r)(1) because each is a "stationary source" that produced, processed, handled, and/or stored one or more regulated substances listed under Section 112(r)(3) of the CAA, 42 U.S.C. § 7412(r)(3).

40.     At all times relevant to this action, each of the Refineries produced, processed, handled, and/or stored one or more regulated substances listed under Section 112(r)(3) of the CAA, 42 U.S.C. § 7412(r)(3), above the thresholds set forth in 40 C.F.R. § 68.10, and used these substances in a "process" as defined by 40 C.F.R. § 68.3.

41.     The Refineries, and/or certain processes within each of the Refineries, are each subject to RMP Regulations applicable to "Program 3" facilities within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

42.     The Richmond Refinery is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9), and therefore also a "facility" within the meaning of Section 304 of EPCRA, 42 U.S.C. § 11004.

43.     At all times relevant to this action, Defendant has been and continues to be the "person in charge" of the Richmond Refinery within the meaning of Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), and its implementing regulations found at 40 C.F.R. § 302.6.

44.     At all times relevant to this action, Defendant has been and continues to be an "owner or operator" of the Richmond Refinery within the meaning of Section 304 of EPCRA, 42 U.S.C. § 11004, and its implementing regulations found at 40 C.F.R. § 355.33.

## VI.   GENERAL ALLEGATIONS

45.     On August 2, 2012, there was a release of 838 pounds of hydrogen sulfide from the Richmond Refinery.  Hydrogen sulfide is a listed hazardous substance with a reportable quantity of 100 pounds.  40 C.F.R. § 302.4.

46.     Chevron was aware of the release described in Paragraph 45 at the time of the release.  At least seven hours passed after the release before Chevron notified the National Response Center, the LEPC, or the SERC.

47.     On August 6, 2012, there was a loss-of-containment incident and fire at the 4 Crude Unit of the Richmond Refinery.  The incident involved a release of one or more regulated substances listed in 40 C.F.R. § 68.130, Table 1 (regulated toxic substances) and/or Table 3 (regulated flammable substances).  Following the incident, employees were evacuated from the area, the Richmond community was instructed to shelter in place, and over 15,000 nearby residents sought medical assistance.

48.     Following the incident described in Paragraph 47, EPA began an investigation of Defendant's implementation of Section 112(r) of the CAA, Section 103 of CERCLA, and Sections 302 through 312 of EPCRA at the Richmond Refinery.  This investigation included but was not limited to an inspection of the Richmond Refinery between August 2012 and June 2013.

49.     Based on the investigation described in Paragraph 48, EPA issued sixty-four (64) Findings of Violation against the Richmond Refinery.

50.     EPA subsequently expanded its investigation to the El Segundo Refinery, Kapolei Refinery, Pascagoula Refinery, and Salt Lake City Refinery; this investigation included, but was not limited to, inspections of the El Segundo Refinery in November 2013, of the Kapolei Refinery in April 2014, of the Pascagoula Refinery in September 2014, and of the Salt Lake City

Refinery in June 2013.  The MDEQ also participated in the September 2014 inspection of the Pascagoula Refinery.

51.     On January 13, 2013, a pressure detonation occurred in the air pollution control device associated with the Fluid Catalytic Cracking ("FCC") Unit at the El Segundo Refinery, which caused an emergency shutdown of the El Segundo Refinery and significant flaring, leading to the release of one or more regulated substances listed in 40 C.F.R. § 68.130, Table 1 (regulated toxic substances) and/or Table 3 (regulated flammable substances).

52.     On November 15, 2013, an explosion and fire occurred at the Plant 80 Reformate Splitter Unit located at the Pascagoula Refinery during the lighting of the F-8007 fired heater. That explosion and fire led to the death of an employee at the Pascagoula Refinery.  The explosion involved a release of reformate, a flammable mixture containing 1-butene, pentane, isopentane, ethane, propane, isobutane, 2-methylpropene, hydrogen, and methane, all of which are regulated flammable substances listed in 40 C.F.R. § 68.130, Table 3.  Flame heights reached as high as 150 feet.

53.     Based on the investigation described in Paragraph 50, EPA issued twenty-four (24) Potential Findings against the El Segundo Refinery; thirty (30) Potential Findings against the Kapolei Refinery; five (5) Notices of Potential Violations against the Pascagoula Refinery; and eleven (11) Notice of Inspection Findings and two (2) Areas of Concern against the Salt Lake City Refinery.

## FIRST CLAIM FOR RELIEF

**Failure to Comply with the Requirements of the General Duty Clause
of Section 112(r)(1) of the CAA at the Richmond Refinery**

54.     Paragraphs 1 through 53 are incorporated herein by reference.

55.     Pursuant to Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1), Defendant is required "to identify hazards which may result from [accidental] releases [of regulated substances] using appropriate hazard assessment techniques, to design and maintain a safe facility taking such steps as are necessary to prevent releases, and to minimize the consequences of accidental releases which do occur."

56.     The following process units within the Richmond Refinery, as described in Chevron's Risk Management Plan for the Richmond Refinery, are collectively referred to below as the "Richmond GDC Units": the Diesel Hydro Treater (referred to in the Risk Management Plan, and hereinafter referred to in this Complaint, by the abbreviation "DHT"), the TKN Hydrocracker Unit/Isomax Plant ("TKN/ISO"), the Pen Hex Isomerization Unit ("PenHex Iso"), and the Heavy Neutral Hydrocracker ("HNC").

57.     At the Richmond Refinery, Chevron has promulgated a set of management directives known as "Refinery Instructions."  At all times relevant to this Complaint, Refinery Instructions were Chevron's primary method of setting and communicating expectations for the process safety program elements at a refinery.

58.     As identified in the inspections of August 9, 2012 through June 2013, and, upon information and belief, continuing for a period of time thereafter,  Defendant failed to design and maintain a safe facility at the Richmond GDC Units by taking such steps as necessary to prevent accidental releases of regulated substances, including but not limited to the following failures:

          a.      Failure to adequately develop and implement operating instructions and procedures at the DHT and the TKN/ISO;

          b.      Failure to adequately implement management of change process at the TKN/ISO and the PenHex Iso; and

          c.      Failure to adequately implement positive materials identification and verification of the materials being used in piping at the HNC, which failure resulted in loss of containment and a fire at Furnace F-1550 at the Richmond Refinery on November 2, 2011.

59.     Feasible means existed by which Defendant could have addressed the issues set forth in Paragraph 58 above, and maintained a safe facility at the Richmond GDC Units.  Such feasible means are described in the Richmond Refinery's own relevant Refinery Instructions.

60.     Each instance of a failure by Defendant to design or maintain a safe facility at the Richmond GDC Units constitutes a violation of the General Duty Clause of Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1).

61.     Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, Defendant is liable for injunctive relief and assessment of civil penalties of up to $37,500 per day, per violation, for each violation of Section 112(r)(1) of the CAA at the Richmond Refinery that occurred after January 12, 2009 but no later than November 2, 2015, and $97,229 per day, per violation, for each such violation that occurred after November 2, 2015.

**SECOND CLAIM FOR RELIEF**

**Failure to Adequately Implement a Risk Management Program as Required by Applicable RMP Regulations, 40 C.F.R. Part 68, at the Richmond Refinery**

62.     Paragraphs 1 through 61 are incorporated herein by reference.

63.     The Richmond Refinery's 4 Crude Unit is subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and the RMP Regulations promulgated thereunder at 40 C.F.R. Part 68, and specifically those regulations applicable to Program 3 processes, as admitted in Defendant's Risk Management Plan.

64.     As identified in the inspections of August 9, 2012 through June 2013, and, upon information and belief, continuing for a period of time thereafter, Defendant failed to timely and adequately comply with the following RMP Regulations for the 4 Crude Unit at the Richmond Refinery:

a.     Failure to establish and implement an appropriate Management System to oversee implementation of a Risk Management Program, as required by 40 C.F.R. §§ 68.12-15;

b.     Failure to ensure the accuracy of process safety information, as required by 40 C.F.R. § 68.65;

c.     Failure to conduct adequate process hazard analysis, as required by 40 C.F.R. § 68.67;

d.     Failure to establish and implement adequate operating procedures, as required by 40 C.F.R. § 68.69;

e.     Failure to implement adequate employee training, as required by 40 C.F.R. § 68.71;

f.      Failure to establish and implement adequate procedures to ensure mechanical integrity, as required by 40 C.F.R. § 68.73;

g.      Failure to establish and implement adequate management of change procedures, as required by 40 C.F.R. § 68.75;

h.      Failure to properly document an appropriate response to each of the findings of compliance audits, as required by 40 C.F.R. § 68.79(d);

i.      Failure to ensure that findings and recommendations of incident investigations had been adequately addressed and implemented, as required by 40 C.F.R. § 68.81(e); and

j.      Failure to establish and implement an adequate emergency response program, in violation of 40 C.F.R. § 68.95(a).

65.      Each instance of a failure by Defendant at the Richmond Refinery's 4 Crude Unit to comply with the RMP Regulations, 40 C.F.R. Part 68, as set forth in Paragraph 64.a.-64.j. above, constitutes a violation of Section 112(r)(7) of the CAA.

66.      Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, Defendant is liable for injunctive relief and assessment of civil penalties of up to $37,500 per day, per violation, for each violation of Section 112(r)(7) of the CAA at the Richmond Refinery that occurred after January 12, 2009 but no later than November 2, 2015, and $97,229 per day, per violation, for each such violation that occurred after November 2, 2015.

**THIRD CLAIM FOR RELIEF**

**Failure to Make a Timely Notification of Release of a Hazardous Substance at the Richmond Refinery as Required by Section 103 of CERCLA**

67.      Paragraphs 1 through 53 are hereby incorporated by reference.

68.      Hydrogen sulfide is a listed hazardous substance with a reportable quantity of 100 pounds.  40 C.F.R. § 302.4.

69.      The release of hydrogen sulfide from the Richmond Refinery on August 2, 2012, as described in Paragraph 45, was above the reportable quantity.

70.     Chevron was aware of this release at the time of the release.  However, Chevron failed to notify the National Response Center for over seven hours after the release, in violation of Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), and 40 C.F.R. § 302.6.

71.     Section 109(c) of CERCLA provides:

> The President may bring an action in the United States district court for the appropriate district to assess and collect a penalty of not more than $25,000 per day for each day during which the violation (or failure or refusal) continues in the case of . . . (1) A violation of the notice requirements of section 9603(a) or (b) of this title . . . . In the case of a second or subsequent violation (or failure or refusal), the amount of such penalty may be not more than $75,000 for each day during which the violation (or failure or refusal) continues.

42 U.S.C. § 9609(c).

72.     Under the Debt Collection Improvements Act of 1996, 31 U.S.C. § 3701, as implemented by the Civil Monetary Penalties Inflation Rule, 40 C.F.R. Part 19, the $25,000 penalty has been increased to $37,500 a day for violations occurring after January 12, 2009 but not later than November 2, 2015.

73.     Defendant is liable for a penalty for $37,500 for its failure to timely notify the National Response Center on August 2, 2012, of the release of a hazardous substance above the reportable quantity at the Richmond Refinery.

**FOURTH CLAIM FOR RELIEF**

**Failure to Make a Timely Notification of Release of a Hazardous Substance at the Richmond Refinery as Required by Section 304 of EPCRA**

74.     Paragraphs 1 through 53 and Paragraphs 67 through 73 are hereby incorporated by reference.

75.     For Richmond, California, the SERC is the California Governor's Office of Emergency Services, and the LEPC emergency coordinator is the Contra Costa County Fire Department.

76.     Hydrogen sulfide is a listed hazardous substance with a reportable quantity of 100 pounds.  40 C.F.R. § 302.4.

77.     The release of hydrogen sulfide from the Richmond Refinery on August 2, 2012, as described in Paragraph 45, was above the reportable quantity.

78.     Chevron was aware of this release at the time of the release.  However, Chevron failed to notify the LEPC or SERC for over seven hours after the release, in violation of Section 304 of EPCRA, 42 U.S.C. § 11004, and 40 C.F.R. § 355.33.

79.     Section 325(b)(3) of EPCRA provides, in pertinent part:

> The Administrator may bring an action in the United States District court for the appropriate district to assess and collect a penalty of not more than $25,000 per day for each day during which the violation continues in the case of a violation of the requirements of section 11004 of this title.

42 U.S.C. § 11045(b)(3).

80.     Under the Debt Collection Improvements Act of 1996, 31 U.S.C. § 3701, as implemented by the Civil Monetary Penalties Inflation Rule, 40 C.F.R. Part 19, the $25,000 penalty has been increased to $37,500 a day for violations occurring after January 12, 2009 but not later than November 2, 2015.

81.     Defendant is liable for a penalty of $37,500 for its failure to timely notify the LEPC on August 2, 2012, and for a penalty of $37,500 for its failure to timely notify the SERC on August 2, 2012, of the release of a hazardous substance above the reportable quantity at the Richmond Refinery.

## FIFTH CLAIM FOR RELIEF

### Failure to Adequately Implement a Risk Management Program as Required by Applicable RMP Regulations, 40 C.F.R. Part 68, at the El Segundo Refinery

82.     Paragraphs 1 through 53 are incorporated herein by reference.

83.     At the El Segundo Refinery, twenty-three (23) processes, including among them three (3) processes within the FCC Unit (the FCC Gas Recovery Section, the FCC Fractionation Section, and the FCC Gaso Stripping Section (collectively, "the FCC Processes")) and the entirety of the #4 Crude Unit, as described in Chevron's Risk Management Plan for the El Segundo Refinery, are subject to the requirements of Section 112(r) of the Clean Air Act, 42

U.S.C. § 7412(r), and the RMP Regulations promulgated thereunder at 40 C.F.R. Part 68, and specifically those regulations applicable to Program 3 processes.   Defendant's Risk Management Plan for the El Segundo Refinery identifies and describes the #4 Crude Unit and the FCC Gas Recovery Section within the FCC as Program 3 processes.  Defendant's Risk Management Plan for the El Segundo Refinery incorrectly claims that the FCC Fractionation Section and the FCC Gaso Stripping Section are Program 1, even though they are interconnected with the FCC Gas Recovery Section.

84.    As identified in the inspection of November 4 through 8, 2013, and, upon information and belief, continuing for a period of time thereafter, Defendant failed to timely and adequately comply with the following RMP Regulations for the specified processes at the El Segundo Refinery:

a.    Failure to establish and implement an appropriate Management System to oversee implementation of a Risk Management Program at the El Segundo Refinery, as required by 40 C.F.R. §§ 68.12-15;

b.    Failure to correctly identify that the FCC Fractionation Section and the FCC Gaso Stripping Section, since they are interconnected with an admitted Program 3 process, *i.e.*, the FCC Gas Recovery Section, are Program 3 processes, as required by 40 C.F.R. § 68.12(d);

c.    Failure to ensure the accuracy of process safety information at the FCC Processes and the #4 Crude Unit, as required by 40 C.F.R. § 68.65;

d.    Failure to conduct adequate process hazard analysis at the FCC Processes, as required by 40 C.F.R. § 68.67;

e.    Failure to establish and implement adequate operating procedures at the FCC Processes, as required by 40 C.F.R. § 68.69;

f.    Failure to establish and implement adequate employee training at the FCC Processes, as required by 40 C.F.R. § 68.71;

       g.       Failure to establish and implement adequate procedures to ensure mechanical integrity at the FCC Processes and the #4 Crude Unit, as required by 40 C.F.R. § 68.73;

       h.       Failure to establish and implement adequate management of change procedures at the FCC Processes, as required by 40 C.F.R. § 68.75;

       i.       Failure to establish and implement adequate pre-startup procedures at the FCC Processes, as required by 40 C.F.R. § 68.77;

       j.       Failure to establish and implement an adequate contractor management system at the FCC Processes, as required by 40 C.F.R. § 68.87;

       k.       Failure to make timely submissions of accurate refinery location data at the El Segundo Refinery, as required by 40 C.F.R. § 68.150;

       l.       Failure to provide information required for each Program 3 process, as required by 40 C.F.R. § 68.175; and

       m.       Failure to make required corrections to new accident history in the Risk Management Plan within six (6) months of a reportable accidental release at the FCC Processes, as required by 40 C.F.R. § 68.195(a).

       85.       Each instance of a failure by Defendant at the El Segundo Refinery to comply with the RMP Regulations, 40 C.F.R. Part 68, as set forth in Paragraph 84.a.-84.m. above, constitutes a violation of Section 112(r)(7) of the CAA.

       86.       Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, Defendant is liable for injunctive relief and assessment of civil penalties of up to $37,500 per day, per violation, for each violation of Section 112(r)(7) of the CAA at the El Segundo Refinery that occurred after January 12, 2009 but no later than November 2, 2015, and $97,229 per day, per violation, for each such violation that occurred after November 2, 2015.

## SIXTH CLAIM FOR RELIEF

**Failure to Adequately Implement a Risk Management Program as
Required by Applicable RMP Regulations, 40 C.F.R. Part 68, at the Kapolei
Refinery**

87.     Paragraphs 1 through 53 are incorporated herein by reference.

88.     During the time Defendant owned and/or operated the Kapolei Refinery, seven (7) processes at the Kapolei Refinery, including among them the Crude Unit, the Fluidized Catalytic Crack, and the Alkylation Unit, as described in the Risk Management Plan for the Kapolei Refinery, were subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and the RMP Regulations promulgated thereunder at 40 C.F.R. Part 68, and specifically those regulations applicable to Program 3 processes, as admitted in Defendant's Risk Management Plan.

89.     As identified in the inspection of April 14 through 17, 2014, and, upon information and belief, continuing for a period of time thereafter during Defendant's ownership and/or operation of the Kapolei Refinery, Defendant failed to timely and adequately comply with the following RMP Regulations for the specified processes at the Kapolei Refinery:

a.     Failure to establish and implement an appropriate Management System to oversee implementation of a Risk Management Program at the Kapolei Refinery, as required by 40 C.F.R. §§ 68.12-15;

b.     Failure to ensure the accuracy of process safety information at the Fluidized Catalytic Crack, as required by 40 C.F.R. § 68.65;

c.     Failure to promptly document an appropriate response to each of the findings of the process hazard analysis at the Fluidized Catalytic Crack, as required by 40 C.F.R. § 68.67;

d.     Failure to establish and implement adequate operating procedures at the Fluidized Catalytic Crack, as required by 40 C.F.R. § 68.69;

e.     Failure to establish and implement adequate procedures to ensure mechanical integrity at the Kapolei Refinery, as required by 40 C.F.R. § 68.73;

f.     Failure to establish and implement adequate management of change procedures at the Fluidized Catalytic Crack and the Alkylation Unit, as required by 40 C.F.R. § 68.75;

g.      Failure to establish and implement adequate pre-startup procedures at the Fluidized Catalytic Crack, as required by 40 C.F.R. § 68.77;

h.      Failure to adequately conduct compliance audits and to promptly document an appropriate response to each of the findings of the compliance audits at the Kapolei Refinery, as required by 40 C.F.R. § 68.79; and

i.      Failure to establish and implement an adequate emergency response program at the Kapolei Refinery, in violation of 40 C.F.R. § 68.95(a).

90.      Each instance of a failure by Defendant at the Kapolei Refinery to comply with the RMP Regulations, 40 C.F.R. Part 68, as set forth in Paragraph 89.a.-89.i. above, constitutes a violation of Section 112(r)(7) of the CAA.

91.      Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, Defendant is liable for assessment of civil penalties of up to $37,500 per day, per violation, for each violation of Section 112(r)(7) of the CAA that occurred at the Kapolei Refinery after January 12, 2009 but no later than November 2, 2015, and $97,229 per day, per violation, for each such violation that occurred after November 2, 2015.

## SEVENTH CLAIM FOR RELIEF

### Failure to Comply with the Requirements of the General Duty Clause of Section 112(r)(1) of the CAA at the Pascagoula Refinery

92.      Paragraphs 1 through 53 are incorporated herein by reference.

93.      Pursuant to Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1), Defendant is required "to identify hazards which may result from [accidental] releases [of regulated substances] using appropriate hazard assessment techniques, to design and maintain a safe facility taking such steps as are necessary to prevent releases, and to minimize the consequences of accidental releases which do occur."

94.      As identified in the inspection of September 8 through 11, 2014, and, upon information and belief, continuing for a period of time thereafter, Defendant failed to adequately identify, through the use of appropriate hazard assessment techniques, hazards at the Pascagoula Refinery that may result from accidental releases of regulated substances, including but not

22

limited to the hazards associated with the use of fired heaters, such as fire and explosion, and more specifically, the hazard presented by the accumulation of combustibles within the fired heater firebox (also known as "bogging"), and did not address prior known instances of bogging for the F-8007 fired heater.

95.     Feasible means existed by which Defendant could have eliminated or reduced each hazard listed in Paragraph 94 above, including but not limited to: by conducting an appropriate hazard assessment; by follow-up evaluation of bogging incidents that occurred prior to the November 15, 2013, explosion at the Pascagoula Refinery, which explosion resulted from a bogging incident; and by following recognized and generally accepted good engineering practices.

96.     As identified in the inspection of September 8 through 11, 2014, and, upon information and belief, continuing for a period of time thereafter,  Defendant failed to design and maintain a safe facility at the Pascagoula Refinery by taking such steps as necessary to prevent accidental releases of regulated substances, including but not limited to the following failures: failure to establish and implement adequate standard operating procedures for the fired heater start-up process, including adequate warnings; failure to follow Chevron's own employee training guidelines for operators who work in the vicinity of fired heaters; and failure to establish and implement adequate emergency response procedures, and specifically the failure to include the risk of bogging incidents in its emergency response planning.

97.     Feasible means existed by which Defendant could have addressed the issues set forth in Paragraph 96 above, and could have designed and maintained a safe facility at the Pascagoula Refinery.

98.     Each instance of a failure by Defendant to adequately identify hazards at the Pascagoula Refinery, and each instance of a failure by Defendant to design and/or maintain a safe facility at the Pascagoula Refinery, constitutes a violation of the General Duty Clause of Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1).

99.     Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, Defendant is liable for injunctive relief and assessment of civil penalties of up to $37,500 per day, per violation, for each violation of Section 112(r)(1) of the CAA that occurred at the Pascagoula Refinery after January 12, 2009 but no later than November 2, 2015, and $97,229 per day, per violation, for each such violation that occurred after November 2, 2015.

## EIGHTH CLAIM FOR RELIEF

**Failure to Adequately Implement a Risk Management Program as Required by Applicable RMP Regulations, 40 C.F.R. Part 68, Miss. Code Ann. § 49-17-29, and 11 Miss. Admin. Code Pt. 2, R. 8.2, at the Pascagoula Refinery**

100.     Paragraphs 1 through 53 and Paragraphs 92 through 99 are incorporated herein by reference.

101.     Defendant is subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), the RMP Regulations promulgated thereunder at 40 C.F.R. Part 68 and Miss. Code Ann. § 49-17-29, and specifically those regulations applicable to Program 3 processes, and is subject to the RMP implementing regulations set forth at 11 Miss. Admin. Code Pt. 2, R.8.2, with respect to the Pascagoula Refinery, because it is the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process. The Risk Management Plan submitted by the Pascagoula Refinery identifies and describes several such processes.

102.     As identified in the inspection of September 8 through 11, 2014, and, upon information and belief, continuing for a period of time thereafter, Defendant failed to timely and adequately comply with the following RMP Regulations for the relevant processes at the Pascagoula Refinery:

a.     Failure to ensure the accuracy of process safety information, by failing to include process and instrumentation diagrams for Blending Tank-field and Wastewater Treatment processes as required by 40 C.F.R. § 68.65(d)(1)(ii) and 11 Miss. Admin. Code Pt. 2, R.8.2;

24

COMPLAINT
*United States of America and the State of Mississippi v. Chevron U.S.A. Inc.* (N.D. Cal.)

b.     Failure to update and revalidate its process hazard analysis throughout the Pascagoula Refinery, as required by 40 C.F.R. § 68.67(f) and 11 Miss. Admin. Code Pt. 2, R.8.2; and

c.     Failure to submit an RMP for flares 1-6, as required by 40 C.F.R. § 68.150 and 11 Miss. Admin. Code Pt. 2, R.8.2.

103.   Each instance of a failure by Defendant at the Pascagoula Refinery to comply with the RMP Regulations, 40 C.F.R. Part 68, as set forth in Paragraph 102.a.-102.c. above, constitutes a violation of Section 112(r)(7) of the CAA.

104.   Each instance of a failure by Defendant at the Pascagoula Refinery to comply with the RMP implementing regulations, 11 Miss. Admin. Code Pt. 2, R.8.2, as set forth in Paragraph 102.a.-102.c. above, constitutes a violation of Section 112(r)(7) of the CAA.

105.   Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, Defendant is liable for injunctive relief and assessment of civil penalties of up to $37,500 per day, per violation, for each violation of Section 112(r)(7) of the CAA that occurred at the Pascagoula Refinery after January 12, 2009 but no later than November 2, 2015, and $97,229 per day, per violation, for each violation that occurred after November 2, 2015.

106.   Pursuant to Miss. Code Ann. § 49-17-43, Defendant is liable for injunctive relief and assessment of civil penalties of up to $25,000 per day, per violation, for each violation of 11 Miss. Admin. Code Pt. 2, R. 8.2 at the Pascagoula Refinery.

## NINTH CLAIM FOR RELIEF

### Failure to Adequately Implement a Risk Management Program as Required by Applicable RMP Regulations, 40 C.F.R. Part 68, at the Salt Lake City Refinery

107.   Paragraphs 1 through 53 are incorporated herein by reference.

108.   Defendant is subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and the RMP Regulations promulgated thereunder at 40 C.F.R. Part 68, and specifically those regulations applicable to Program 3 processes, with respect to the Salt Lake City Refinery, because it is the owner and/or operator of a stationary source that had more than a

25

COMPLAINT
*United States of America and the State of Mississippi v. Chevron U.S.A. Inc.* (N.D. Cal.)

threshold quantity of a regulated substance in a process.  The Risk Management Plan submitted

by the Salt Lake City Refinery identifies and describes several such processes.

109.    As identified in EPA's inspection on June 24 through 27, 2013, and upon

information and belief, continuing for a period of time thereafter, Defendant failed to timely and

adequately comply with the following RMP Regulations for the relevant processes at the Salt

Lake City Refinery:

a.    Failure to establish and implement an appropriate Management System to

oversee implementation of a Risk Management Program at the Salt Lake City Refinery, as

required by 40 C.F.R. §§ 68.12-15;

b.    Failure to conduct adequate process hazard analysis, as required by 40

C.F.R. § 68.67, including but not limited to the failure to timely resolve and document process

hazard analysis recommendations and findings (40 C.F.R. § 68.67(e));

c.    Failure to establish and implement adequate operating procedures, as

required by 40 C.F.R. § 68.69;

d.    Failure to implement and/or document adequate employee training, as

required by 40 C.F.R. § 68.71;

e.    Failure to establish and implement adequate procedures to ensure

mechanical integrity, and failure to document persons responsible for inspection and testing of

process equipment, as required by 40 C.F.R. § 68.73; and

f.    Failure to establish and implement adequate management of change

procedures, as required by 40 C.F.R. § 68.75.

110.    Each instance of a failure by Defendant at the Salt Lake City Refinery to comply

with the RMP Regulations, 40 C.F.R. Part 68, as set forth in Paragraph 109.a.-109.f. above,

constitutes a violation of Section 112(r)(7) of the CAA.

111.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R.

§ 19.4, Defendant is liable for injunctive relief and assessment of civil penalties of up to $37,500

per day, per violation, for each violation of Section 112(r)(7) of the CAA that occurred at the

Salt Lake City Refinery after January 12, 2009 but no later than November 2, 2015, and $97,229 per day, per violation, for each such violation that occurred after November 2, 2015.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court

A.  Order Defendant to immediately comply with the Clean Air Act statutory and regulatory requirements cited in this Complaint, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b);

B.  Assess civil penalties against Defendant not to exceed $37,500 per day, per violation, for each violation of Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1), and the RMP Regulations promulgated under Section 112(r)(7) of the CAA, 42 U.S.C. § 7412(r)(7), and codified at 40 C.F.R. Part 68, occurring on or before November 2, 2015, and not to exceed $97,229 per day, per violation, for each violation occurring after November 2, 2015;

C.  Assess a CERCLA civil penalty against Defendant not to exceed $37,500 for its failure to timely notify the National Response Center on August 2, 2012, of a release of a hazardous substance at the Richmond Refinery;

D.  Assess an EPCRA civil penalty against Defendant not to exceed $37,500 for its failure to timely notify the LEPC on August 2, 2012, of a release of a hazardous substance at the Richmond Refinery, and a civil penalty against Defendant not to exceed $37,500 for its failure to timely notify the SERC on August 2, 2012, of a release of a hazardous substance at the Richmond Refinery;

E.  Impose such injunctive relief on Defendant as may be appropriate to mitigate the effects of Defendant's violations, and prevent any future violations of same;

F.  Award the United States its costs and expenses incurred in this action; and

G.  Grant such other relief and further relief as this Court may deem appropriate.

Plaintiff, the MDEQ, joins in subparagraphs A., E., and G. of the United States' prayer for relief insofar as those subparagraphs concern the RMP violations alleged at the Pascagoula

1   Refinery (Eighth Claim for Relief).  The MDEQ also respectfully requests that this Court assess

2   civil penalties against Defendant not to exceed $25,000 per day, per violation, for each violation

3   of 11 Miss. Admin. Code Pt. 2, R. 8.2; and respectfully requests that this Court award the MDEQ

4   its costs and expenses incurred in this action.

5   Dated: Oct. 24 , 2018                    Respectfully submitted,

6

7        /s/ ~~Jeffrey H. Wood~~

8        JEFFREY H. WOOD
         Acting Assistant Attorney General
         Environment and Natural Resources Section

9

10       /s/ ~~Deborah A. Gitin~~
         DEBORAH A. GITIN (CABN 284947)

11       Senior Counsel
         Environmental Enforcement Section

12       Environment and Natural Resources Section
         U.S. Department of Justice

13       301 Howard Street, Suite 1050
         San Francisco, CA 94105

14       Telephone: (415) 744-6488
         Facsimile: (415) 744-6476

15       Email: Deborah.Gitin@usdoj.gov

16

17       *Attorneys for the United States of America*

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT
*United States of America and the State of Mississippi v. Chevron U.S.A. Inc.* (N.D. Cal.)

1

2      ALEX G. TSE
      United States Attorney

3

4      /s/   Michelle Lo /

5      MICHELLE LO (NYBN 4325163)
      Assistant United States Attorney

6      450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495

7      Telephone: (415) 436-7180
      Facsimile:  (415) 436-6748

8      Email: Michelle.Lo@usdoj.gov

9

10      *Attorneys for the United States of America*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

GRETCHEN L. ZMITROVICH (MSBN 101470)

3    Senior Attorney
     Office of Pollution Control

4    Mississippi Department of Environmental Quality
     P.O. Box 2261

5    Jackson, MS  39225-2261
     Telephone: (601) 961-5050

6    Facsimile: (601) 961-5674
     Email: gzmitrovich@mdeq.ms.gov

7

8    *Attorney for the State of Mississippi*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT
*United States of America and the State of Mississippi v. Chevron U.S.A. Inc.* (N.D. Cal.)

OF COUNSEL FOR THE UNITED STATES OF AMERICA:

JOSHUA WIRTSCHAFTER
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, CA 94105

ELLEN ROUCH
Attorney-Adviser
U.S. Environmental Protection Agency
Region IV
61 Forsyth Street, S.W.
Atlanta, GA 30303

MARC WEINER
Enforcement Attorney
U.S. Environmental Protection Agency
Region VIII
1595 Wynkoop Street
Denver, CO 80202-1129

COMPLAINT
*United States of America and the State of Mississippi v. Chevron U.S.A. Inc.* (N.D. Cal.)